

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

Nos. 07-18-00327-CR
07-18-00328-CR
07-18-00329-CR

JACOB ALAN EDGAR, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court Nos. 73,480-E, 73,481-E, 73,482-E, Honorable Douglas R. Woodburn, Presiding

January 24, 2020

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Jacob Alan Edgar, appeals his convictions for unlawful possession of a firearm by a felon, aggravated assault with a deadly weapon, and burglary of a habitation with intent to commit other felony. Through three issues, he contends that 1) his rights pursuant to the 5th, 6th and 14th Amendments to the U.S. Constitution, Art. 1, Section 10 of the Texas Constitution and Articles 1.04 and 1.05 of the Texas Code of Criminal Procedure were violated, 2) the evidence was insufficient to prove he committed

aggravated assault during his burglary of a habitation, and 3) a variance between the indictment, jury charge, and verdict form denied him due process. We modify the judgment and affirm.

*Background*

Appellant was indicted for being a felon in possession of a firearm in cause number 73,480-E (480), committing aggravated assault with a deadly weapon upon Nicole Baker in cause number 73,481-E (481), and burglarizing the habitation of Pamela King and committing aggravated assault in cause number 73,482-E (482).[1] Approximately two months before trial, appellant's appointed defense counsel (Warner) filed identical motions to withdraw in each of the three cases. He alleged therein that he 1) had good cause to withdraw, 2) that cause consisted of a "personality conflict with" appellant, 3) "no longer desire[d] to represent," and 4) could not "adequately represent" appellant due to the conflict. The record does not reflect whether the trial court convened a hearing on the motions. It does illustrate, though, that the trial judge denied the motions filed in causes 480 and 482 and granted that filed in 481 the day after the motions were filed. The decision to grant Warner leave to withdraw was followed by no other order appointing new counsel or reinstating Warner.

About two months later, Warner moved to have the jury assess punishment in all three cases. Trial in all three cases began on that same day. During the proceeding, no one mentioned the order in cause 481 granting Warner leave to withdraw. Nor did appellant attempt to represent himself regarding the accusations levied in 481. Nor did

---

[1] Appellant was also charged with an offense in trial court cause number 74,114. However, the cause was not appealed and therefore not before us.

2

alternate counsel appear on behalf of appellant in that cause. Simply put, all, including the trial court, acted as if Warner were appellant's counsel in all three proceedings.

As trial progressed, evidence was admitted illustrating that appellant, a convicted felon, first shot a person named Dallas Whipple multiple times. In fleeing the scene, appellant broke through a neighbor's door with gun in hand. The neighbor, Pamela King, testified she feared for her life upon hearing the crash and seeing appellant and his gun. Her reaction to his presence and her developing fear came rather quickly. She struck and kicked him. That resulted in appellant resuming his flight with gun in hand, encountering Baker outside, pointing the firearm at her, running into her house, and hiding in a bedroom. He was found and captured in the bedroom. The jury found him guilty of all three charges.

*Issue One – Denial of Defense Counsel's Motions to Withdraw*

Through his first issue, appellant contended the trial court violated his constitutional rights by denying trial counsel's motions to withdraw. We overrule the issue.

Why only one of three motions to withdraw was granted is not reflected within the appellate record. Similarly unmentioned is why the two orders denying the motions in 480 and 482 contained the undated typed word "DENIED" in the signature line while the order in 481 contained the judge's signature and an accompanying date. Presumably, the trial court knew of all three, but whether he acted upon all of them on the same date is unclear.

Nevertheless, appellant believed his fundamental constitutional rights to adequate counsel and due process were violated when the trial court denied leave to withdraw in 480 and 482 while granting leave in 481. The constitutional rights in question implicate

3

the 5th, 6th and 14th Amendments to the U.S. Constitution, as well as Art. 1, Section 10 of the Texas Constitution. His rights under Articles 1.04 and 1.05 of the Texas Code of Criminal Procedure were also denied him, purportedly. Aside from the due process contention, no others were substantively developed, however. That is, aside from his argument about being denied due process, none of the allusions to other constitutional or statutory rights were accompanied by any explanation as to how they were denied him. Consequently, that portion of the issue is inadequately briefed and, therefore, waived. *Jordan v. State*, No. 07-17-00324-CR, 2019 Tex. App. LEXIS 783, at *4–5 (Tex. App.—Amarillo Feb. 5, 2019, pet. ref'd) (per curiam) (mem. op., not designated for publication) (stating that when citation and argument are missing, the topic has been inadequately briefed and waived).

As for the matter of due process, appellant suggested the right obligated the trial court to inquire into the "conflict of interest" asserted by defense counsel and cited *Suniga v. State*, No. AP-77,041, 2019 Tex. Crim. App. Unpub. LEXIS 128, at *7–8 (Tex. Crim. App. Mar. 6, 2019) (per curiam) (op. on reh'g) (not designated for publication) in support of the contention. Yet, nothing was said of due process in the motions to withdraw. Nor did appellant object to Warner's continued representation in all three cases, much less assert that it or the trial court's action *viz-a-viz* the motions denied him due process.[2] So, this alleged ground for reversal was waived, as well. *Smith v. State*, No. 07-99-0478-CR, 2000 Tex. App. LEXIS 2835, at *5 (Tex. App.—Amarillo Apr. 24, 2000, pet. ref'd) (not

---

[2] The same is true of the other constitutional and statutory rights he mentioned in issue one. The motions to withdraw alluded to none of them, and no one objected to Warner's continued representation of appellant in any of the cases.

4

designated for publication) (holding that appellant's due process arguments were waived because they were not raised at trial).

Yet, even if preserved, we note that *Suniga* dealt with trial counsel purporting to act under a "conflict of interest." No doubt, "[o]nce a possible conflict of interest is brought to the trial court's attention by either a pre-trial motion or trial objection, the court has a constitutional obligation to take adequate steps to ascertain whether the risk of the conflict of interest is too remote to warrant remedial action." *Suniga*, 2019 Tex. Crim. App. Unpub. LEXIS 128, at *7–8; *accord Routier v. State*, 112 S.W.3d 554, 581 (Tex. Crim. App. 2003) (stating that when either the appellant or his attorney brings a potential conflict of interest to the attention of the trial court, the latter has an obligation to investigate it). Here, though, Warner did not allege that he had a "conflict of interest." Rather, he averred that there existed an undetailed "personality conflict" between himself and appellant.

Conflicts of interest exist when ""counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps his own) to the detriment of his client's interest."" *Routier*, 112 S.W.3d at 582 (quoting *James v. State*, 763 S.W.2d 776, 779 (Tex. Crim. App. 1989)). To the extent that they may legitimize a request to withdraw, the same is not generally true of a personality conflict between counsel and attorney. Indeed, our Court of Criminal Appeals noted as much in *King v. State*, 29 S.W.3d 556 (Tex. Crim. App. 2000), when observing that personality conflicts and disagreements over trial strategy are typically not valid grounds for withdrawal. *Id.* at 566. So, given that 1) the conflict between trial counsel and appellant was being labelled one of "personality" as opposed to "interest," 2) nothing of record illustrates the circumstances underlying the personality conflict and whether it actually arose to a conflict of interest, 3) *Suniga* spoke of "conflicts of interest" and not personality,

4) personality conflicts normally do not justify withdrawal, and 5) the mere chance of a possible conflict of interest is not enough to require a hearing on a motion to withdraw, we cannot say that appellant carried his burden to establish that the trial court denied him due process when failing to investigate the conflict before denying the motions in 480 and 482. *See Hobbs v. State*, 359 S.W.3d 919, 927 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (stating that the mere possibility of a conflict of interest is not sufficient to require a hearing on a motion to withdraw). But, we remain puzzled about why leave was granted in one case and not the others.

*Issue Two – Evidence Insufficient to Prove Aggravated Assault*

Appellant next contended that the evidence was insufficient to support his conviction in cause number 482. The crime for which he was convicted, according to the judgment, was "Burglary Habitation Intend Other Felony." Through the indictment, the State alleged that he had "intentionally or knowingly entered a habitation, without the effective consent of the owner . . . KING, and committed the felony offense of Aggravated Assault with a Deadly Weapon." The evidence allegedly is insufficient to establish guilt because it failed to illustrate he pointed the gun at King, verbally threatened her, physically assaulted her, laid a hand on her, or tried to commit any other criminal offense aside from breaking down her door and entering her house for a brief period. We overrule the issue.

A person commits burglary if, without the effective consent of the owner, he enters a habitation with the intent to commit a felony, theft, or an assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2019). The crime is punishable as a felony where the accused burglarized the habitation and a) entered with the intent to commit a felony other than felony theft or b) committed or attempted to commit a felony other than felony theft. *See*

*id.* § 30.02(d). The felony appellant allegedly committed upon entering the home was aggravated assault.

Aggravated assault has two components, they being assault coupled with an aggravating factor. *Id.* § 22.02(a) (West 2019). One commits assault by, among other things, intentionally or knowingly threatening another with imminent bodily injury. *Id.* § 22.01(a)(2). The aggravating factors which elevate assault to aggravated assault consist of proof either that the bodily injury was "serious," *id.* § 22.02(a)(1), or that the accused used or exhibited a deadly weapon during the assault. *Id.* § 22.02(a)(2). Appellant questioned whether the State proved the component of assault itself.

It has long been true that threats of imminent harm may be conveyed by word or act. *Flander v. State*, No. 05-16-01356-CR, 2017 Tex. App. LEXIS 11765, at *5 (Tex. App.—Dallas Dec. 19, 2017, pet. ref'd) (mem. op., not designated for publication) (quoting *De Leon v. State*, 865 S.W.2d 139, 142 (Tex. App.—Corpus Christi 1993, no pet.)). Moreover, the accused's demeanor and his possession of a weapon are influential in evaluating the existence of such a threat. *Id.* As said in *De Leon*, the mere presence of a deadly weapon, under proper circumstances, may be enough to constitute the requisite threat of imminent bodily injury. *De Leon*, 865 S.W.2d at 142. Indeed, the accused need not necessarily point the weapon at the victim or verbally threaten him or her. *Flander,* 2019 Tex. App. LEXIS 11765, at *6 (describing precedent holding that an assault occurred even though the defendant did not point the gun or utter verbal threats). For instance, a victim hearing a gun shot, witnessing the accused attempting to break down the door, fearing for her life, and fleeing as the defendant gave chase was sufficient to prove assault in *Young v. State*, 993 S.W.2d 390, 391 (Tex. App.—Eastland 1999, no pet.).

Here, we have evidence illustrating that the victim (King) 1) just returned home, 2) saw an unknown person (appellant) skulking in a neighbor's yard, 3) heard appellant crash through her own door, 4) saw appellant rush into her home with gun in hand, and 5) feared for her life. Those circumstances may not be identical to the ones in *Young*. They, nonetheless, suffice as some evidence permitting a rational juror to conclude beyond reasonable doubt that appellant committed assault by intentionally or knowingly threatening King with imminent bodily injury. He need not have touched her. Nor need he have pointed the weapon at her or uttered verbal threats. And, because the firearm he held while barging into the home was and is a deadly weapon, *see* TEX. PENAL CODE ANN § 1.07 (a)(17)(A) (West Supp 2019) (defining deadly weapon as "a firearm"), we cannot but conclude that the State proved the elements of aggravated assault, beyond reasonable doubt.

*Issue Three – Variance between the Indictment and the Jury Charge*

Appellant raised the topic of variance through his last issue. He believed that one arose between the indictment, jury charge, verdict form, and judgment. That is, the crime described in the indictment and jury charge allegedly differed from the crime described in the verdict form and judgment. Thus, "the jury was not correctly informed as to what legal standard, they should base their deliberations," or so he posited. And, this variation allegedly allowed the jury to arrive at a less than unanimous verdict. We overrule the issue.

The variance concerns cause number 482. Again, the State alleged in the respective indictment that appellant "intentionally or knowingly entered a habitation, without the effective consent of the owner . . . KING, ***and committed the felony offense of Aggravated Assault with a Deadly Weapon***." (Emphasis added). The jury charge

8

submitted to the jury during the guilt innocence phase somewhat deviated from the highlighted language within its opening paragraph. There, the trial court informed the jury that "[t]he defendant, JACOB EDGAR, stands charged by indictment with the offense of Burglary of Habitation **with Intent to Commit Other Felony**." As can be seen, the passage "committed the felony offense of aggravated assault with a deadly weapon" was replaced with the phrase "intent to commit other felony." Nonetheless, the application paragraph, which is the "'heart and soul'" of the jury charge, *Vasquez v. State*, 389 S.W.3d 361, 366–67 (Tex. Crim. App. 2012), mirrored the language within the indictment. Through it, the trial court instructed the jurors to find appellant "guilty of Burglary of a Habitation as charged in the indictment," if they "find from the evidence beyond a reasonable doubt that . . . [he] did then and there intentionally or knowingly enter a habitation, without the effective consent of . . . King the owner thereof, and **committed the felony offense of Aggravated Assault with a Deadly Weapon**." (Emphasis added). Yet, in the verdict form accompanying the jury charge, the trial court returned to the use of "with intent to commit other felony" in lieu of "committed . . . aggravated assault."

No doubt, the phrase "intent to commit other felony" differs from "committed the felony offense of aggravated assault with a deadly weapon." No doubt, the "other felony" alluded to in the former need not be the "aggravated assault" mentioned in the latter. And, that seems to be the crux of appellant's complaint.

Greater care in reading the indictment, jury charge, and verdict form would have avoided the circumstance before us. Yet, the variance and any purported harm arising therefrom was cured by the phrase "as charged in the indictment." Not only did it appear in the application paragraph of the charge but also in the verdict form. And, including

9

such a reference cures complaints like those at bar where the choices in the verdict form limit the decision to finding appellant either not guilty or guilty of the crime "as charged in the indictment." *Jason v. State*, 589 S.W.2d 447, 451–52 (Tex. Crim. App. 1979) (so finding where the indictment alleged aggravated rape of a child, the court charged the jury on aggravated rape of a child, and the verdict form read, "'We, the jury, find the defendant guilty of the offense of rape of a child [a]s charged in the indictment'"); *Henley v. State*, No. 01-94-00067-CR, 1995 Tex. App. LEXIS 1718, at *4 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (not designated for publication) (so holding "because the verdict also included the catch-all phrase 'as charged in the indictment'").

As for the judgment in 482 reflecting that appellant was convicted of Burglary of a Habitation with the Intent to Commit Other Felony, we have the authority to modify it to speak the truth as illustrated by the record. TEX. R. APP. P. 43.2(b). *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Therefore, we modify the trial court's judgment to correctly show appellant was convicted of burglary of a habitation and committing the felony offense of aggravated assault with a deadly weapon. Being so modified, the judgment is affirmed.

Brian Quinn
Chief Justice

Do not publish.

10